*In the Matter of the Estate of*
*Amy KINDLE*
*Harry Descheene Jr.*
Appellant
*vs.*
*Herman Light,* et al.
Appellees

In the Supreme Court of the Navajo Nation

No. SC-CV-38-99

August 2, 2001

Thomas J. Hynes, Esq., Farmington, New Mexico, for Appellant.

Herman Light, Esq., Shiprock, Navajo Nation (New Mexico), for Appellees.

Before AUSTIN, Acting Chief Justice, and KING-BEN and HOLGATE, Associate Justices.

Opinion delivered by AUSTIN, Acting Chief Justice.

This is an appeal from a July 9, 1999 order of the Shiprock Family Court which dismissed a probate action on the ground of *res judicata* based upon a prior judgment that incorporated an agreement made in peacemaking. The prior judgment was rendered in the case of *In the Matter of Grazing Permit No. 12-2846 etc.*, No. SR/FC-PM-95-37 (Ship. Fam. Ct. Aug. 18, 1995). The appellant, Harry Descheene ("Descheene"), the personal representative of Amy Kindle's estate, appeals on the grounds that the Peacemaker Division of the Shiprock Family Court had no jurisdiction over the probate of Amy Kindle's grazing permit (No. 12-2846) and, therefore, the prior judgment, based upon an agreement reached in peacemaking, was not *res judicata*. The issues before this Court are the jurisdiction of the Peacemaker Division and the application of the principle of *res judicata* to peacemaking decisions.

On March 30, 1995, Kayah David, Amy Kindle's sole surviving son, filed an

application for peacemaking with the Peacemaker Division of the Shiprock Judicial District, which stated, 'I would like to distribute the grazing Permit (which I receive) among (3) people, myself, my son and Mae Denetclaw." The application listed the individuals to be involved in the peacemaking, including Mae Denetclaw (a sister), Iris Whitemagpie (the applicant's child), Curtis L. David (the applicant's child), Lucinda [David Faught] (the applicant's child), Herman Light, Willie Light, Carl Todacheene, and David Burbank (a member of the Shiprock area Grazing Committee). A notice of a peacemaking hearing was issued on that same day, and John Pettigrew was appointed as the peacemaker. The grazing permit allowed 137 sheep units in Grazing District No. 12. It was owned by Amy Kindle, who died on February 26, 1993.

A peacemaking session was held at the Shiprock District Court on May 9, 1995, and Kayah David, Mae Denetclaw, Herman Light, Willie Light, Carol Todacheene, and Curtis David were present, with John Pettigrew, the peacemaker. The peacemaking agreement recites that Kayah David said that the grazing permit originally belonged to his father, and when he passed away, it went to his mother, Amy Kindle. He said, 'I will leave it up to my son, Curtis David and Mae Denetclaw to divide however they want. I live on the grazing area. I have a house there and I want to stay there. I do not wish to get any part of the grazing permit. I relinquished my share." Peacemaking Agreement (May 9, 1995). Mae Denetclaw, Kayah David's sister, said that she wanted some sheep units added to her grazing permit. *Id.* Willie Light, listed as Kayah David's brother, said he also wanted some additional sheep units, as did Herman Light, who is also listed as Kayah David's brother. *Id.* Curtis David, Kayah David's son, said he lived and worked in Phoenix, but he wanted a share of the permit for his family and in the event he moved back to the Navajo Nation. *Id.*

The agreement of "the heirs/children" was that 30 sheep units would go to Mae Denetclaw, 60 sheep units would go to Curtis David, Willie Light would get 23 sheep units, and Herman Light would get 24 sheep units. *Id.* The record of that peacemaking session, in Case No. SR/FC-PM-95-37, also includes letters or notes from Lucinda David Faught and Iris David Whitemagpie, the children of Kayah David, indicating their agreement with the distribution of the sheep units of the grazing permit. They are dated after the peacemaking agreement. On August 15, 1995, the Shiprock Family Court approved the agreement and incorporated it into a judgment. The judgment recited that the grazing permit had not been probated, and it indicated the relationship of the parties in peacemaking to Amy Kindle. The judgment is proper on its face.

On April 8, 1998, Descheene filed a petition for the probate of Amy Kindle's estate, reciting that he was the son of Daisy Mae Kindle, and the grandson of Amy Kindle, "in accordance with the oral will of Amy Kindle [sic]." He alleged to be an "heir" of the decedent. The petition listed the grazing permit as the sole property of the estate. The family court entered an order appointing Descheene as the personal representative that same day.

On June 9, 1998, Herman Light, on behalf of himself and of the members of the Silaago Altsosie Range and Livestock Association, filed a motion to intervene in the probate, which was granted. The inventory filed with the family court lists the estate property as the grazing permit (valued at $50,000), two summer camp houses, one winter camp hogan, and one stone house (winter camp) (valued at $50,000), and five corrals "on" customary use areas (valued at $6,000), for a total estate value of $106,000.

On March 30, 1999, the interveners asked the family court to dismiss the probate petition, based upon the prior judgment and the peacemaking agreement. Following briefing and a hearing on the motion, the court dismissed the probate action.

## II

The Navajo Nation courts have the authority to apply "customs of the Navajo Nation" as law, 7 N.N.C. § 204(A) (1995 ed. ) . The Navajo Nation Supreme Court has the power to adopt rules of "pleading, practice, and procedure," with the approval of the Judiciary Committee of the Navajo Nation Council. 7 N.N.C. § 601(A), (B) (1995 ed.). The Navajo Peacemaker Court Rules (N.P.C.R.) were adopted in 1982, and they give broad authority to the peacemaking program to handle many kinds of cases. Rule 1.4, N.P.C.R. The family court has original jurisdiction over the descent and distribution of "deceased Indians' unrestricted. property" (probate jurisdiction) . 8 N.N.C. § 1 (1995 ed.). The choice of law statute in our short probate code requires the application of Navajo inheritance customs, but if a custom is not "proved," the court may apply state law to determine the heirs of a decedent. 8 N.N.C. § 2(B) (1995 ed.).

The Peacemaker Division (the name was changed from "Peacemaker Court") was created as part of the district court, but because the family court is part of the district court by definition, 7 N.N.C. § 103 (1995 ed.), local peacemaking programs in the seven judicial districts are also attached to the family court. Over the years, a practice has evolved where people use the local peacemaking program to resolve various kinds of cases, including probate actions.

Rule 4.3, N.P.C.R., provides that the trial court may enter a judgment upon a peacemaking agreement if (1) the court has personal and subject matter jurisdiction, (2) all necessary parties have actual knowledge of the proposed judgment and agree to it or agree to submit the case to the peacemaker, (3) the judgment contains the complete agreement of the parties and there is sufficient information regarding the full agreement so future disputes will not arise, and (4) the proposed judgment is otherwise proper and enforceable. Therefore, the judgment based upon the peacemaking agreement is valid if those conditions have been satisfied.

Given Descheene's attack on the jurisdiction of peacemaking, we need to discuss the necessity of peacemaking in probate cases. First, the law favors settlements and compromises among heirs, so long as all heirs are involved.

Second, given the due process right of access to the courts, widespread poverty, and a shortage of affordable legal services, peacemaking is an excellent alternative to adversarial litigation and part of the current movement to assure access to remedies. Third, peacemaking complies with fundamental principles of civil due process of law, so long as all necessary parties receive notice and there is no attempt to defraud creditors. We approve peacemaking as a probate substitute for those reasons.

## III

We agree with Descheene on the standards for *res judicata*, namely that (1) the parties in the second action must be the same or in privity with the parties in the first, (2) the subject matter or cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits. Where the record shows notice was given to heirs and other interested parties in a probate action, the decision will be considered final and *res judicata. Lee v. Begay*, 1 Nav. R. 27, 29 (Nav. Ct. App. 1971). The immediate problem before us is whether Descheene is an "heir" or is in privity with a prior party.

Our probate code, at 8 N.N.C. § 2(A) (1995 ed.), permits "any member claiming to be an heir" to petition the family court to determine heirs and divide property. We assume that "member relates back to the term "member of the Navajo Nation" in the first part of the statute. Therefore, Descheene, who alleged he was a grandson of the decedent, had the right to petition the family court. However, was he an "heir" at all? If the state law of inheritance applied, then Descheene might be an heir.

In the New Mexico portion of the Navajo Nation, where a decedent has no surviving spouse, the property is divided "among the issue." Rule 6(4), N. R. Prob. P. In this case, the "issue" was Kayah David, the decedent's sole surviving son. However, Descheene might step into his mother's shoes for a per stirpes distribution of the estate. The problem, however, is Descheene alleged the first part of the applicable law section (concerning Navajo custom), 7 N.N.C. § 204(A), in his petition by vaguely alleging that Amy Kindle had an oral will. In addition, the record does not disclose the terms of that will, or whether the evidence would support it.

The peacemaking in this case was an attempt to avoid probate, as is shown by the appellees' arguments reciting difficulties with the cost and availability of legal services. Does it make a difference that houses and corrals were added to the inventory, although the petition alleges only the grazing permit? It should be understood that a grazing permit is only a license to graze animals in a given area, and it gives no land ownership interests. However, there is a traditional tenure by way of customary residence, as here, where there were traditional winter and summer sheep camps. It appears, under the peacemaking agreement, that Kayah David claimed at least one residence.

Descheene's probate petition alleges that "certain individuals [the appellees]" have attempted to circumvent Navajo Nation probate laws by invoking peacemaking directly. In response, the appellees accuse Descheene of attempting to claim property to which he has no right. Descheene also failed to name "all heirs" in his petition, as is required by Rule 1(e), Nav. R. Prob. P. There are hints of a range dispute in the record, particularly with the presence of a range and livestock association as a party.

It may be that the parties to the peacemaking agreement felt that they had included all 'heirs" by including living relatives of a sole surviving son. However, we have a possible heir per stirpes under state law (a question we do not decide), and the allegation of an oral will. Therefore, not all necessary parties had actual knowledge of the proposed peacemaking judgment. We also find that the parties in the probate action were not the same or in privity with the parties in the peacemaking action. We therefore reverse the family court's dismissal of Descheene's probate petition.

Court officials, including Peacemaker liaisons, when handling grazing permits or probates in peacemaking, must either ascertain all possible heirs to property or assure publication of notice that is likely to draw the attention of interested persons. Judges entering judgments based upon peacemaking agreements should also ensure compliance with due process requirements and other applicable laws. While we do not want to increase the cost of access to legal remedies, we stress the importance of giving public notice of peacemaking sessions involving probates or probate alternatives to avoid problems such as the one before us. The peacemaking forms attempt to ensure that all interested parties are involved, but without general notice, it is easy to upset an otherwise valid judgment, as here, if there is a misrepresentation or error.

This cause is remanded to the Shiprock Family Court for a determination of heirs, determination of the validity of the alleged oral will, and proceedings which are consistent with this opinion.